**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEARSBORO TELEPHONE COMPANY, INC.<br><br>LYNNVILLE TELEPHONE COMPANY, INC.<br><br>      Plaintiffs,<br><br>   v.<br><br>QWEST COMMUNICATIONS COMPANY, LLC<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 09-cv-01116-RMC<br>)<br>)<br>) (Oral Argument Requested)<br>)<br>)<br>)<br>)<br>) |

**QWEST'S MOTION TO DISMISS COUNTS II AND III, AND TO DISMISS OR IN THE ALTERNATIVE TO STRIKE, PLAINTIFFS' REQUEST FOR ATTORNEY FEES BASED ON TARIFFS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Qwest Communications Company, LLC ("Qwest") respectfully submits this memorandum of law in support of its motion to dismiss Counts II (*quantum meruit*) and III (unjust enrichment) of Plaintiffs' Complaint (Dkt. 1), for failure to state claims upon which relief can be granted. Qwest also moves to dismiss for failure to state a claim, or in the alternative pursuant to Rule 12(f) to strike, Paragraph 15 of the Complaint and the request for attorneys' fees and costs based on the Plaintiffs' filed tariffs.

As stated in Qwest's attached Memorandum in Support of this Motion, the Plaintiffs' *quantum meruit* and unjust enrichment claims are barred by the filed rate doctrine.

Plaintiffs' request for attorney's fees and costs based on their tariffs fails to state a claim because the Plaintiffs' filed tariffs do not provide for attorneys' fees and costs to a prevailing party on a billing dispute.

Qwest respectfully requests that the Court dismiss Counts II and III with prejudice, and dismiss the tariff-based request for attorneys' fees and costs (Paragraph 15 and wherefore clause of Count I). A proposed form of order is attached.

## REQUEST FOR ORAL HEARING

Pursuant to LCvR 7(f), Qwest respectfully requests oral hearing of this Motion. Oral argument of counsel will assist the Court in considering the law that shows Plaintiffs' Counts II and III (and request for attorneys' fees and expenses based on their tariff) cannot state a claim for relief.

Dated: July 23, 2009

| | |
|---|---|
| /s/    Charles W. Steese_____<br>Filed Electronically | /s/       Jonathan Frankel_____<br>Filed Electronically |
| Charles W. Steese (*pro hac vice*)<br>STEESE & EVANS, P.C.<br>6400 S. Fiddlers Green Circle, Suite 1820<br>Denver, Colorado 80111<br>Tel: (720) 200-0676<br>Fax: (720) 200-0679<br>csteese@s-elaw.com | Jonathan J. Frankel, D.C. Bar #450109<br>WILMER CUTLER PICKERING<br>        HALE AND DORR, LLP<br>1875 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>Tel: (202) 663-6113<br>Fax: (202) 663-6363<br>Jonathan.Frankel@wilmerhale.com<br><br>*Attorneys for Defendant Qwest*<br>*Communications Company, LLC* |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SEARSBORO TELEPHONE COMPANY, INC. <br><br> LYNNVILLE TELEPHONE COMPANY, INC. <br><br>           Plaintiffs, <br><br> v. <br><br> QWEST COMMUNICATIONS COMPANY, LLC <br><br>           Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  No. 09-cv-01116-RMC <br><br> (Oral Argument Requested) |

**QWEST'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II AND III, AND TO DISMISS OR IN THE ALTERNATIVE TO STRIKE, PLAINTIFFS' REQUEST FOR ATTORNEY FEES BASED ON TARIFFS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Qwest Communications Company, LLC ("Qwest") respectfully submits this memorandum of law in support of the above motion.

Qwest has moved to dismiss Counts II (*quantum meruit*) and III (unjust enrichment) of Plaintiffs' Complaint (Dkt. 1) for failing to state claims upon which relief can be granted.  As another federal court has already held in a virtually identical lawsuit, these claims are barred by the filed rate doctrine, which limits a common carrier's recovery for allegedly unpaid service to the specific product offerings enumerated in its tariffs filed with state and federal regulators. Counts II and III, by contrast, assert common-law theories of liability and recovery that are wholly outside Plaintiffs' filed tariffs.

In addition, Qwest has moved to dismiss (or, in the alternative, to strike) Plaintiffs' claim for attorneys' fees. *See* Complaint ¶ 15. Plaintiffs' filed tariffs do not provide for the recovery of attorneys' fees in billing disputes, and Plaintiffs cannot create extra-tariff liabilities.

## I.   RELEVANT FACTUAL ALLEGATIONS

Searsboro and Lynnville are regulated local telephone companies. Complaint ¶ 1.[1] Plaintiffs filed tariffs with the Federal Communications Commission ("FCC") and the Iowa Utilities Board governing the rates, terms, and conditions for the purported access services at issue in this litigation. Complaint ¶¶ 1, 11, 18. Indeed, Plaintiffs were legally required to file tariffs for access services. 47 U.S.C. § 203; 47 C.F.R. § 69.3; Iowa Code §§ 476.3, 476.4, 476.5; 199 IAC § 22.14. Plaintiffs allege they provided interstate and intrastate exchange access services to Qwest pursuant to those tariffs, that Qwest refuses to pay, and as a result Qwest purportedly breached their tariffs. Complaint ¶¶ 9, 14, 21; Count I.[2]

Even though Plaintiffs' access services must be tariffed, the Complaint contains two claims that seek compensation for their services on common-law grounds that have no basis in the tariffs at all. Count II of the complaint seeks recovery *in quantum meruit*, and Count III states a common-law claim for unjust enrichment. The Complaint (¶ 15) also seeks to recover attorneys' fees, even though the Plaintiffs' FCC and Iowa Utilities Board tariffs do not provide for such. Qwest expects Plaintiffs included these alternative claims because they correctly anticipate that Qwest plans to file counterclaims, alleging the calls in question do not qualify for payment under Plaintiffs' access tariffs. Even though the calls do not meet the requirements of

---

[1] As required for a motion to dismiss under Rule 12, Qwest assumes the factual allegations of the Complaint are true for purposes of this Motion only.
[2] Qwest disputes these allegations and avers that the calls in question do not qualify for switched access charges pursuant to the plain language of the Plaintiffs' access tariffs. As such, when Qwest's Answer is due after resolution of its Motion to Dismiss Counts II and III, Qwest will also file counterclaims.

2

the access tariffs, the filed rate doctrine forbids recovery by LECs outside the strict scope of the tariffs. As a result, Counts II and III fail as a matter of law as barred by the filed rate doctrine.

> A. **Plaintiffs' *Quantum Meruit* Claim Seeks Compensation for Plaintiffs' Services on the Basis of the Alleged "Fair Value" of Services Provided, Rather Than on Their Filed Tariffs.**

Plaintiffs' first claim for relief alleges breach of contract and seeks recovery from Qwest under their access tariffs. Complaint ¶¶ 17-22. The second claim alleges a *quantum meruit* theory for the same services:

> In the alternative, it is averred that Plaintiffs, at Defendant's request, and with Defendant's knowledge, acquiescence and acceptance, provided to Defendant exchange access services.
>
> In the course of providing such services, Plaintiffs necessarily incurred various costs, and charges for labor, for use of its [sic] equipment and facilities and for other expenses.
>
> Defendant has refused, despite demand, **to pay the fair value for the services furnished**, although payment is past due.

Complaint ¶¶ 24-26 (emphasis added). The *quantum meruit* claim incorporates the allegations in the tariff claim (*Id*. ¶ 23), which includes assertions that the Plaintiffs filed tariffs that "describe the rates and services offered by Plaintiffs to their customers"; that Plaintiffs provided exchange access services to Qwest; and that Qwest "undertook and assumed an obligation to make all payments due to Plaintiffs in accordance with the terms of the tariffs." *Id.* ¶¶ 19-20. Plaintiffs consistently allege that Qwest received exchange access services pursuant to the Plaintiffs' tariffs: "Defendant has engaged in providing telecommunications services and telecommunications related services for which Defendant has utilized Plaintiffs' interstate and intrastate exchange access services." *Id*. ¶ 10; *see also id.* ¶ 13 ("Plaintiffs' charges for the services have been and continue to be in compliance with all applicable tariffs."). Thus, Count II seeks compensation for the same services as the breach of tariffs claim. The claim seeks

3

damages of an unspecified amount, and attorneys' fees and costs without alleging a basis for recovering such fees and costs. *Id.* at "wherefore" clause of Count II.

### B. **Plaintiffs' Unjust Enrichment Claim Likewise Seeks Compensation for Plaintiffs' Services on a Basis Other Than Their Tariffs.**

Plaintiffs' unjust enrichment claim similarly seeks compensation for the same services as Counts I and II. For this claim, Plaintiffs allege that Qwest "received the benefits of" Plaintiffs' purported exchange access services:

> Defendant obtained from Plaintiffs exchange access services. Defendant received the benefits of those services and failed to make proper payment or restitution to Plaintiffs for the services and benefits received.
>
> Defendant has been unjustly enriched at the expense of Plaintiffs.
>
> Defendant's actions constitute an unjust retention of benefit owed to Plaintiffs, which is contrary to the principles of equity and justice.

Complaint ¶¶28-30 (Count III). This count incorporates the rest of the Complaint by reference. *Id.* at ¶27. As in Count II, the claim seeks damages of an unspecified amount, and attorneys' fees and costs without identifying a basis for recovery. *Id.* at "wherefore" clause of Count III. Just like Count II, this claim also anticipates Qwest's counterclaims that will allege Plaintiffs' interstate and intrastate access tariffs do not apply to calls routed to or through their free calling service company ("FCSC") partners. Thus, Plaintiffs hope to overcome Qwest's counterclaims by asserting a quasi-contract claim. The unjust enrichment claim simply restates Plaintiffs' tariff claim in the attempt to collect on an equitable basis instead of through the tariffs.

### C. **Plaintiffs Assert a Right to Attorneys' Fees and Costs Pursuant to Their Tariffs, But The Tariffs Do Not Provide Such a Right.**

In Paragraph 15 of the Complaint, Plaintiffs assert that "Defendant is responsible for any fees or expenses, including attorneys' fees, in collecting or attempting to collect, any charges owed in accordance with the tariffs." Complaint ¶ 15. The Complaint does not allege what

4

portion(s) of the Plaintiffs' tariffs authorize them to collect their attorneys' fees or expenses.  The Plaintiffs' access tariffs are publicly filed documents available through the websites of the Iowa Utilities Board and the Federal Communications Commission.[3]  The Court can consider these tariffs on a motion to dismiss because they are (1) the contracts that form the basis of the claims and thus are central to the Plaintiffs' claims, (2) records of administrative agencies, and (3) public records subject to judicial notice generally.  *See, e.g., Marshall Cty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1222 (D.C. Cir. 1993); *Hinton v. Corrections Corp. of America,* 2009 WL 1636100, 1 (D.D.C. June 11, 2009); *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).  For interstate purposes, Plaintiffs opted into NECA Tariff FCC No. 5.  That tariff contains a provision on "Billing Disputes" and does not provide for the recovery of attorneys' fees or costs to the prevailing party.  *See* **Exhibit A,** Declaration of Charles W. Steese, and **Exhibit B** (copy of the Billing Disputes section of the NECA Tariff FCC No. 5 currently on file with the FCC).  Likewise, the Plaintiffs' intrastate access tariff specifically incorporates the terms and conditions of the NECA interstate access tariff; thus, the same "Billing Disputes" section applies to all aspects of Plaintiffs' breach of tariffs claim.   Dkt. 9 (Qwest Motion to Transfer), at Exhibits C and (Pt. VII), Exhibit E (Iowa Telecommunications Association tariff adopting the NECA Tariff FCC No. 5).

**II.     ARGUMENT**

    **A.     The Standard for a Motion to Dismiss.**

---

[3] *See, e.g.,* [https://efs.iowa.gov/efiling/groups/external/documents/docket/006336.pdf; http://fjallfoss.fcc.gov/cgi-bin/ws.exe/prod/ccb/etfs/webpublic/browse.hts?IdTariff=110&IdLec=43&User_Type=2&IdLec_User=&id_user=s] (accessed July 21, 2009).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a complaint does not need detailed factual allegations, the complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). "The complaint should not be dismissed unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Iacangelo v. Georgetown Univ.*, 580 F. Supp. 2d 111, 115-116 (D.D.C. 2008) (quoting *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994)). "In evaluating a motion to dismiss, a court must construe the complaint in the light most favorable to the Plaintiff and give the Plaintiff the 'benefit of all inferences that can be derived from the facts alleged.'" *Iacangelo,* 580 F. Supp. 2d at 115 (quoting *Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979)). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Iacangelo*, 580 F. Supp. 2d at 116 (quoting *Wiggins v. Hitchens,* 853 F. Supp. 505, 508 n. 1 (D.D.C. 1994), and 2A Moore's Federal Practice, § 12.07, at 63 (2d ed. 1986)).

> On a motion to dismiss for failure to state a claim, if the allegations contained in the complaint, when taken as true, fail to state a claim for which relief may be granted, or otherwise establish that the complaint faces 'some insuperable bar to relief,' the motion should be granted.

*Iacangelo*, 580 F. Supp. 2d at 116 (quoting *Franklin Asaph Ltd. P'ship v. FDIC,* 794 F. Supp. 402, 404 (D.D.C. 1992)). Under this standard, the Court must dismiss Counts II and III.

### B. The Filed Rate or Filed Tariff Doctrine Restricts Plaintiffs' Right to Compensation to Services Provided by Tariff.

As stated above, Plaintiffs are required to submit access tariffs to both the FCC (for interstate access services) and the Iowa Utilities Board (for intrastate access services). The filed

6

rate doctrine recognizes that the cornerstone to a carrier's entitlement to compensation is the rates, terms and conditions contained in those tariffs. The doctrine applies to interstate tariffs through Section 203(a) of the Communications Act, which provides in relevant part:

> ***Every common carrier***, except connecting carriers, ***shall … file*** with the Commission and print and keep open for public inspection ***schedules showing all charges for itself*** and its connecting carriers ***for interstate and foreign wire or radio communication*** … ***and showing the classifications, practices, and regulations affecting such charges.*** Such schedules shall contain such other information, and be printed in such form, and be posted and kept open for public inspection in such places, as the Commission may by regulation require, and each such schedule shall give notice of its effective date; and such common carrier shall furnish such schedules to each of its connecting carriers, and such connecting carriers shall keep such schedules open for inspection in such public places as the Commission may require.

47 U.S.C. § 203(a) (emphasis added). Thus, Section 203(a) affirmatively requires the carrier to file a tariff "showing ***all*** charges …. [and] the classifications, practices, and regulations affecting such charges."

Section 203(c) reinforces that carriers are prohibited from providing services unless they are identified in filed tariffs and cannot charge rates that are not contained in the tariffs:

> ***No carrier*** … ***shall engage, or participate in such communication unless schedules have been filed*** and published …; ***and no carrier shall*** (1) ***charge, demand, collect, or receive a greater or less or different compensation*** for such communication, or for any service in connection therewith … than the charges specified in the schedule then in effect, or … (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.

47 U.S.C. § 203(c) (emphasis added).[4]  Section 203(c) thus expressly prohibits a carrier from, *inter alia,* charging "greater or less or different compensation" than its tariffed rates, or providing services that are not contained in filed tariffs.

The statutory language makes plain that filed tariffs must state the rates as well as the terms and conditions that define the services for which the carrier can charge. *AT&T Co. v. Cent. Office Tel.,* 524 U.S. 214, 223-224 (1998) ("Rates …. have meaning only when one knows the services to which they are attached"); *see also AT&T Corp. v. F.C.C.,* 394 F.3d 933, 934 (D.C. Cir. 2005) ("Under the Communications Act of 1934, as amended, and the 'filed rate doctrine' incorporated therein, neither the carrier nor its customers could depart from the terms set forth in AT&T's tariffs"); *Orloff v. F.C.C.,* 352 F.3d 415, 418 (D.C. Cir. 2003); *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 187 (D.D.C. 2001) ("Section 203(c) of the Act makes it unlawful for carriers to provide communications services except pursuant to a filed tariff.").

> [T]he rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext…. [T]he carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. ***This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress*** in the regulation of interstate commerce in order to prevent unjust discrimination.

*Lipton,* 135 F. Supp. 2d at 187 (emphasis added) (quoting *Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 97 (1915).  The case law making this point is uniform.  *See Firstcom, Inc. v. Qwest Corp.,* 555 F.3d 669, 681 (8th Cir. 2009) (filed rate doctrine bars claims for rates or services on terms other than as stated in filed tariff); *Evanns v. AT & T Corp.,* 229 F.3d 837, 840 (9th Cir. 2000); *Hill v. BellSouth Telecomm., Inc.,* 364 F.3d 1308, 1316 (11th Cir. 2004)).  *See*

---

[4] Plaintiffs also violate Section 203(c)'s prohibition of "refund[ing] or remit[ting] by any means or device any portion of the charges so specified," by kickbacks to FCSCs, but this is a matter outside the allegations of the complaint and thus not an issue to resolve on a Rule 12 motion.

8

*also Lipton v. MCI Worldcom, Inc.,* 135 F. Supp. 2d 182, 188 (D.D.C. 2001); *Northern Valley Commc'ns v. MCI Commc'ns Servs., Inc.,* 2008 U.S. Dist. LEXIS 49484, *7-8 (D.S.D. June 26, 2008); *Telecom Int'l Am., Ltd. v. AT&T Corp.,* 280 F.3d 175, 195 (2nd Cir. 2001) ("*Central Office* defines 'rate' broadly to include both monetary and non-monetary terms of a contract, including the quality and the type of services."); *Sancom, Inc. v. Qwest Commc'ns Corp.,* 2008 U.S. Dist. LEXIS 49491, *8 (D.S.D. June 26, 2008); *Sancom, Inc. v. Qwest Commc'ns Corp.*, 2009 WL 1748709, *4 (D.S.D. June 19, 2009).

Moreover, the applicability of the filed rate doctrine is the same on both the federal and state levels. By statute, Iowa law requires local exchange carriers to file access tariffs. Iowa Code §§ 476.3 (LECs must charge in accordance with tariffs), 476.4 ("Every public utility shall file with the board tariffs showing the rates and charges for its public utility services and the rules and regulations under which such services were furnished…"), 476.5 ("No public utility subject to rate regulation shall directly or indirectly charge a greater or less compensation for its services than that prescribed in its tariffs…"); 199 IAC § 22.14(2)(a) (persons providing intrastate access must file intrastate access tariffs with the Iowa Utilities Board); *City of Coralville v. Iowa Utils. Bd.,* 750 N.W.2d 523, 529 (Iowa 2008) ("Iowa Code section 476.4 requires a public utility to file tariffs with the IUB 'showing the rates and charges for its public utility services,' and requires the IUB to promulgate rules for the filing of tariffs"). "The filed-rate doctrine provides that the legal rights of the utility in the customer are measured exclusively by the published tariff." *AT&T Commc'ns of The Midwest, Inc. v. Iowa Utils. Bd.,* 687 N.W.2d 554, 562 (Iowa 2004). Where there is no applicable tariff to support tariff charges for the services, the LEC has no basis for compensation. *Iowa Network Servs., Inc. v. Qwest Corp.*, 466 F.3d 1091, 1097 (8th Cir. 2006), *cert. den'd,* 127 S. Ct. 2255 (2007) ("The IUB did not invalidate

INS's tariffs; it simply stated that the charges as set out in INS's tariffs do not apply to the type of traffic at issue in this case."). Thus, just as with Section 203 in federal law, Iowa has statutorily mandated the filed rate doctrine.

As local telephone carriers with filed tariffs, Plaintiffs are thus prohibited from charging Qwest for services that are not specifically defined in their access tariffs – *i.e.,* Plaintiffs have no right to compensation for services provided that do not qualify as exchange access services in their tariffs. Plaintiffs' Counts II and III nonetheless seek compensation for their services on grounds outside of their tariffs and as such are barred as follows.

### C.     Plaintiffs' *Quantum Meruit* and Unjust Enrichment Claims Are Barred Because They Seek Compensation on a Basis Other than Their Tariffs.

The filed rate doctrine makes it impossible as a matter of law to plead *quantum meruit* or unjust enrichment as alternatives to a tariff claim. Outside of their tariffs, Plaintiffs are not entitled to payment for services, and in any case recovery on these claims would result in Qwest's effective payment for a service not defined by the tariffs, meaning that the Court, rather than the applicable regulatory body, would be setting a rate for a service. As a preliminary matter, Plaintiffs plead *quantum meruit* and unjust enrichment as separate counts, but the allegations for the two claims do not meaningfully differ. Assuming *arguendo* that Plaintiffs have stated legally separate causes of action, under Iowa law "the antiquated term *quantum meruit* is actually used to denote a particular subclass of implied-in-fact contracts – an implied-in-fact contract to pay for services rendered. .... Recovery, therefore, on a claim of *quantum meruit* is guided by all present notions of contract law." *Iowa Waste Sys., Inc. v. Buchanan Cty.*, 617 N.W.2d 23, 29 (Iowa App. 2000) (citing *inter alia, United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.,* 81 F.3d 240, 246 (D.C. Cir. 1996)). "Unjust enrichment on the other hand is not grounded in contract law but rather is a remedy of restitution. …. As it is not

grounded in pure contract law such remedies are often referred to as quasi contracts or implied-in-law contracts." *Iowa Waste Systems*, 617 N.W.2d at 29 (citing *Irons v. Community State Bank,* 461 N.W.2d 849, 855 (Iowa App. 1990)). Thus, both claims seek recovery for the services rendered on the basis of implied contracts, not the tariffs. Such claims cannot stand in the face of the filed rate doctrine.

### *1.     Plaintiffs' Claims of Implied in Fact or Implied in Law Contracts Would Impermissibly Require the Court to Set a Rate.*

Numerous courts have held that the filed rate doctrine bars claims of both implied in fact and implied by law contracts, because both types of claims seek compensation on a basis other than the filed tariffs and would result in the Court impermissibly setting a rate for the services rendered. *See, e.g., MCI WorldCom Network Servs., Inc. v. Paetec Commc'ns, Inc.,* 2005 U.S. Dist. LEXIS 37786, 2005 WL 2145499, *5 (E.D. Va. Aug. 31, 2005), *aff'd*, 204 Fed. Appx. 271 (4th Cir. 2006) (barred unjust enrichment claim; carrier not entitled to payment on services not defined by tariff); *Marcus v. AT&T Corp.,* 138 F.3d 46, 60-62, 64 (2nd Cir. 1998) (dismissal of unjust enrichment based on the defendant charging the plaintiff the defendant's filed rates); *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.,* 2007 WL 2752075, *8-9 (N.D. Iowa March 30, 2007) (filed rate doctrine as to energy tariffs barred state law claims including implied contract in fact and in law); *Advamtel, LLC v. AT & T Corp.*, 118 F. Supp. 2d 680, 688-689 (E.D. Va. 2000) (even an implied contract claim that seeks payment of tariff rate, is barred by filed rate doctrine); *AT&T Corp. v. Swain,* 1998 WL 907031, *2 (N.D. Tex. Dec. 16, 1998) (implied contract claim barred by filed rate doctrine because would result in different rate than tariff); *Equal Access Corp. v. IUB,* 510 N.W.2d 147, 150-151 (Iowa 1993) (provider that failed to file tariffs had no basis, including *quantum meruit*, to obtain compensation; Iowa Utilities Board as the agency with ratemaking authority in its discretion ordered refund of the

provider's charges from twelve months prior). *In re Petitions of Sprint PCS and AT&T Corp., For Declaratory Ruling Regarding CMRS Access Charges*, 17 FCC Rcd 13192, 13196-13199 ¶¶7-8, n.40 (F.C.C. 2002), *aff'd, AT&T Corp. v. FCC*, 349 F.3d 692, 701-703 (D.C. Cir. 2003) (even in detariffed and deregulated context of wireless services, carriers can only obtain compensation for services from another carrier by Commission rule, tariff, or contract, and *quantum meruit*/contract implied in law would impermissibly require court to set a rate). *Cf., State Public Defender v. Iowa Dist. Court for Woodbury Cty.*, 731 N.W.2d 680, 684 (Iowa 2007) ("*quantum meruit* cannot be used to supersede the affirmative requirements of a statute").

Indeed, in a recent traffic pumping decision with virtually identical facts as that contained in the case at bar, the District Court for South Dakota dismissed a claim of unjust enrichment as violative of the filed rate doctrine:

> Sancom alleges that it is entitled to payment from Qwest pursuant to the doctrines of quantum meruit and unjust enrichment. …. Sancom alleges that it originated and terminated long-distance calls for Qwest, which conferred a benefit upon Qwest because Qwest was able to collect from its customers for providing long-distance service. But, Sancom alleges, Qwest has not paid Sancom for providing these services, and it would be inequitable for Qwest to retain the benefit of the services provided by Sancom without properly compensating Sancom. ….
>
> This claim, however, is barred by the filed rate doctrine. In Count I of Sancom's First Amended Complaint, Sancom alleges that Qwest's refusal to pay Sancom for originating and terminating access services breaches the applicable tariffs filed with the FCC and the SDPUC. Taking these allegations to be true, the tariffs cover the services provided by Sancom, and the terms of the tariffs conclusively and exclusively enumerate the rights and liabilities as between Sancom and Qwest. …. Thus, construing the First Amended Complaint in the light most favorable to Sancom, Sancom can prove no set of facts that would entitle it to relief on its unjust enrichment claim.

*Sancom*, 2009 WL 1748709 at *4. The Court should apply the same logic to the case at bar. Plaintiffs' *quantum meruit* and unjust enrichment claims seek recovery to the extent they provided a service to Qwest not covered by their access tariffs. Plaintiffs thus leave open to

proof at trial the amount of damages for these claims, in contrast to the breach of tariffs claim – in which Plaintiffs allege their damages "exceed[]… $750,000" and "late payment fees calculated per the applicable tariffs." Complaint ¶22. Plaintiffs thus impermissibly ask this Court – not the agencies with ratemaking authority – to set a rate for the services they allegedly provided to Qwest. The filed rate doctrine does not allow the Court to set a rate for such services. *Lipton*, 135 F. Supp. 2d at 188 ("the filed-tariff doctrine bars courts from hearing any challenge to duly filed rates," citing *inter alia, Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 251-52 (1951)); *Firstcom*, 555 F.3d at 681; *Sancom*, 2009 WL 1748709 at *5 ("If Sancom were to prevail on its claim that Qwest would be unjustly enriched if it were allowed to retain the benefit of these services without compensating Sancom, the court would be required to determine the value of the services rendered").

> 2. **Plaintiffs' Claims Asserting That Qwest Obtained a Benefit from Third Parties, or Asserting That Qwest Obtained Services Not Contained in Their Tariffs, Are Barred.**

It also appears Plaintiffs intend to argue that Qwest obtained the "benefits of … [their] services" through payments from Qwest's long distance customers. Complaint ¶ 28. This theory is likewise barred by the filed rate doctrine. *See, e.g., Union Tel. Co. v. Qwest Corp.,* 2004 U.S. Dist. LEXIS 28417, 2004 WL 4960780, at *15 (D. Wyo. May 11, 2004), *aff'd,* 495 F.3d 1187 (10th Cir. 2007) (barred unjust enrichment claim; no right to compensation for services not in plaintiff's tariff, regardless of compensation defendant received from its customers); *Freedom Ring Commc'ns, LLC v. AT&T Corp.,* 229 F. Supp. 2d 67, 69-70 (D.N.H. 2002) (filed rate doctrine bars any state law claims that seek "to enforce rights and/or duties that are inconsistent with or depend upon .. [the carrier's] tariffs"); *Alliance Commc'ns. Coop., Inc. v. Global Crossing Telecommc'ns, Inc.,* 2007 U.S. Dist. LEXIS 48091, 25-27 (D.S.D. July 2, 2007)

13

(same); *Sancom*, 2009 WL 1748709 at *4 (dismissing LEC claim for unjust enrichment that alleged Qwest's receipt of revenue from customers as basis). These cases all specifically hold that the filed rate doctrine bars this very type of claim – alleged unjustness in a carrier receiving payment from its end user customers on calls for which it does not compensate the plaintiff under the plaintiff's tariffs. Thus, the filed-rate doctrine bars Counts II and III.

Plaintiffs also cannot overcome these cases by arguing that they provided Qwest with a type of service that is not contained in the tariffs. "A common carrier can only charge customers for services set forth in its tariff, according to the related rates contained in the tariff." *Paetec*, 2005 U.S. Dist. LEXIS 37786 at *8-9. The *Union Telephone* court's discussion of a similar claim is particularly instructive:

> In its Complaint, ***Union requests "that it be compensated for carrier access services as Qwest has been unjustly enriched in that it charges its own customers for the services provided by Union but refuses to remit payment to Union."*** …. Union spends much of its brief attempting to persuade the Court that its tariffs … should be applied to all traffic originating on or transiting Qwest's network for termination by Union. Should the Court not be convinced by this argument (and it is not), Union argues alternatively that in the absence of applicable contract or tariff provisions, Union should be permitted to recover its access charges under a[n] equitable theory of unjust enrichment.
>
> The Court finds that Union has very ably stated a claim for unjust enrichment. ***Yet, the Court finds that Union's claim is barred by the filed rate doctrine.*** … The Court merely points out that Union has failed to comply with applicable statutes and regulations to acquire the tariffs, agreements, and orders necessary to recover access charges for wireless traffic. Based on these facts, as applied to the filed rate doctrine, Union's unjust enrichment claim necessarily fails. Equitable doctrines cannot apply to relieve Union of its obligation to comply with state and federal statutory and regulatory requirements. ***Positing arguments that compensation may be appropriately based on equitable doctrines in the face of such overwhelming failure to comply with applicable requirements is unavailing.***

*Union Telephone,* 2004 U.S. Dist. LEXIS 28417 at *46-48 (emphasis added). Hence, the filed rate doctrine prohibits carriers such as Plaintiffs from obtaining compensation for services based

14

on any theory other than their filed tariffs. The Court should dismiss Counts II and III for failure to state a claim.

### D. The Court Should Dismiss, or Strike, Paragraph 15 and Plaintiffs' Request for Attorneys' Fees and Costs Based on Plaintiffs' Tariffs in Count I.

Plaintiffs assert that Qwest is responsible for attorneys' fees and costs "in collecting or attempting to collect any charges owed in accordance with the tariffs." Complaint ¶ 15. The Plaintiffs' interstate and intrastate access service tariffs do not provide for attorneys' fees or costs to a prevailing party in a billing dispute. *See* Exhibit B. As noted *supra*, the tariffs are documents the Court can consider without converting this Motion to one for summary judgment. *Marshall County,* 988 F.2d at 1222; *Mack*, 798 F.2d at 1282; *Hinton*, 2009 WL 1636100 at 1. The Plaintiffs' access tariffs do not give the prevailing party a right to attorneys' fees or costs. Unlike Paragraph 16's reference to attorneys' fees as allowed by law generally, Paragraph 15 of Plaintiffs' complaint identifies the tariffs as the legal basis for this request, as Plaintiffs must in order to obtain attorneys' fees and costs. *See, e.g.*, *Kansas v. Colorado*, 129 S. Ct. 1294, 1298 (2009); *United States v. Wade,* 255 F.3d 833, 835 (D.C. Cir. 2001); *W.P. Barber Lumber Co. v. Celania,* 674 N.W.2d 62, 66 (Iowa 2003) (attorney fees not allowable unless authorized by statute or contractual agreement)). However, the tariff does not provide this remedy. Therefore, Paragraph 15 of the Complaint fails to state a cognizable remedy for recovery of fees and costs based on the tariffs. [5]

---

[5] Wholly apart from the tariff, Plaintiffs also generically request attorney fees 'as may be allowed by law." Complaint ¶ 16. Under the American Rule, prevailing parties may not obtain attorneys' fees absent express statutory or contractual authorization, *see, e.g.*, *Kansas v. Colorado*, 129 S. Ct. 1294, 1298 (2009), and Plaintiffs identify no such authority. Nevertheless, this Court has held it will not resolve a generic request for attorneys' fees "as allowed by law" on a Rule 12 motion. *See, e.g.*, *Pinnacle Airlines, Inc. v. National Mediation Bd.,* 2003 WL 23281960, 3 (D.D.C. 2003).

In the alternative, the Court should strike Paragraph 15 from the Complaint as immaterial and impertinent under Rule 12(f). While Rule 12(f) motions are viewed with disfavor, *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 201, (D.C. Cir. 1981) (*per curiam*), in this instance the Court should strike Plaintiffs' unsupportable request for attorneys' fees or costs based on their publicly filed tariffs that plainly do not provide such recovery to them.

### III. CONCLUSION

For each of the foregoing reasons, the Court should dismiss Counts II and III, and the request for attorneys' fees and costs in Paragraph 15, for failure to state claims upon which relief may be granted.

Dated: July 23, 2009

/s/    Charles W. Steese            
Filed Electronically

Charles W. Steese (*pro hac vice*)
STEESE & EVANS, P.C.
6400 S. Fiddlers Green Circle, Suite 1820
Denver, Colorado 80111
Tel: (720) 200-0676
Fax: (720) 200-0679
csteese@s-elaw.com

/s/    Jonathan Frankel           
Filed Electronically

Jonathan J. Frankel, D.C. Bar #450109
WILMER CUTLER PICKERING
    HALE AND DORR, LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6113
Fax: (202) 663-6363
Jonathan.Frankel@wilmerhale.com

*Attorneys for Defendant Qwest Communications Company, LLC*